May it please the Court, I'd like to reserve two minutes of my time for rebuttal. Your Honors, we would respectfully submit that a reversal is required in this case on the following grounds. First of all, the District Court lacked jurisdiction to over-appellate because of an effective no-bail warrant, unsupported by a sworn oath or affirmation. Well, there is an oath or affirmation right in the middle of it, and so you're just saying because it's not at the end of it, that therefore that invalidates the whole thing? Well, it's I mean, it's not that we're without an oath or affirmation, it's just a question of its placement, right? Yes, Your Honor. I guess that's the argument that's been made by the government. And what we would submit is that, for example, in the case that we've cited, the Vargas case, Judge Toshima distinctly made a distinction between, for example, a complaint affidavit. In other words, each of these have their own requirements. And what we're saying is that, in this particular case, the facts that were submitted in support of the no-bail warrant were not sworn by Carly Lane. Well, is there any evidence that it wasn't, that that document wasn't all submitted as one document? The record is unclear. We believe that it probably was, but we don't know. I'm sure that the facts that were submitted in support of the no-bail warrant were not, even if it was submitted as one document. Again, we would point out that the facts have to be sworn. They were not. The petition is sort of like a complaint, it was sworn, but the actual statement of facts about what occurred was not sworn. And I think that's a major difference in this particular case. If we were to go the way of saying, well, as long as it's in one package, then what's to prevent anything in the record if it was filed in the same way? If it was filed in the same day or contemporaneously or even within a period of a month from being used to say, well, somebody made a sworn statement somewhere, and therefore that should justify our overlooking the Fourth Amendment, finding some other type of exception in this particular case. I think the Ninth Circuit, at least in the Amaya case, has been very specific. Okay. But there was no affidavit there, right? As far as I know, there was no affidavit. It was simply the sworn petition, the unsworn statement of facts, and, of course, the no-bail warrant was issued by the court. All right. Well, let's assume that we accept your argument there, but even then, I don't think you win yet. So let's... Well, it's a matter of jurisdiction. The court can consider it for the first time, even if it wasn't brought up before. And so we would submit that the government failed Zabinishio. They simply didn't have to... The Supreme Court has already said several times that it doesn't matter how he got there. If he's in the court, if he's before the court, the court has jurisdiction. Well, Your Honor, that may be the case, but in the facts of this specific case, I think we have binding Ninth Circuit law that requires the court to follow its own precedent. Well, going back to Judge Tashima's opinion in the case he cited, that probation period had been served and was over. Well, that's correct, Your Honor. Isn't that a different situation from this, where he's still on? Well, factually, it's different, but I think... Isn't that difference important? No, it isn't. And the reason it isn't important is because Judge Tashima started off with the statement that in order for you to go ahead and issue a warrant, you have to have it comply with the Fourth Amendment. And then he then went into the interpretation of that particular statute, which says that the warrant has to be extended after the end of the supervision period, which goes beyond what might otherwise be the case. And then he said... The Vargas case didn't overrule the Schmidt case, did it? Well, in that particular case, Judge Tashima specifically considered Schmidt and found that it was not applicable. And, in fact, Schmidt, as I recall, was overruled on other grounds. So its validity as precedent, we would submit, is questionable at best. So once again, we believe that the Amaya case is certainly the Ninth Circuit law at present. It is binding upon this Court as precedent, and it basically strikes a blow for saying that the Fourth Amendment says what it says. And that's why we believe in our case law that an illegal arrest does not deprive the court of jurisdiction. Since we have no statute in this case, why shouldn't we just follow that general rule in cases where the supervised release has not ended, as in the case of Vargas and Amaya? Well, Your Honor, we would submit that, well, I guess it would be fact-specific. But in this particular case, where there is a warrant that was involved, then the warrant procedures have to be followed. I think the cases that you're referring to are the ones in which maybe there was a warrantless arrest or something of that nature, where there was probable cause at the time to arrest someone on the spot. Here we have a situation where a probation officer is saying that someone did something, and not actually seeing something occur before him. He's stating specific incidents that occurred that he believes requires a finding of probable cause. And in this particular case, it was unsworn. So we would submit that that is, for example, one distinction. Isn't there a difference between a case where someone is under supervision and a case where the supervision has ended in terms of what may be done? Yes, Your Honor. Unless the supervision is the revocation proceeding is extended, such as in the case of the Amaya case, obviously there's not. This isn't the Amaya case. That's correct. It's a different case. So therefore, why should Amaya apply in this case? Well, Your Honor, Amaya should apply because as a – in order to find that particular statute, to address the statute which extended the revocation period. Okay. So the bottom line is the facts are not exactly the same as Amaya. So what you're saying is if we did apply it, it would be an extension. I just heard the word extension out of your mouth. So it's not, you know, it's... No, it isn't, Your Honor. I would say that Amaya starts off... Amaya stands for the proposition that the fourth has to be followed. Let me ask you this. Skipping ahead, and I want to go to the drug testing, the eight times a month in the drug testing. There's no history of abuse, of drug abuse on the record. However, you acknowledge that there was no objection to this. And so we have to review it for plain error, correct? So tell me why eight times a month is plain error. Well, Your Honor, I would submit that it doesn't require the plain error test. And the reason for this is because, first of all, in the original conditions of supervised release, there was something about drug testing. And when the court imposed its judgment in this particular case, it simply said as a general condition, there will be drug testing. Unfortunately, she also added a few other requirements that were not in the original order. Oh, but that's why attorneys aren't potted plants. That's why they object. Well, Your Honor, when she said it was a standard condition, you know, I think that sort of went under the wire. And secondly, we... So why isn't it plain error then? Well, because in the first place, we objected to the proceeding and encompassed within the revocation. So you get to carry your objection way forward? Yes, Your Honor. Okay. That may be the best we can do, but that's what we have. And secondly, I think the court still is entitled to find plain error in this particular case, especially where it is clear on the record that there was no history of drug abuse, and also because of the Supreme Court precedent in Bearden v. Georgia. And we would submit that in this particular case, the court basically went ahead and revoked, whereas in the Bearden v. Georgia case, we have facts that are somewhat similar to this, in that in Bearden, the defendant couldn't pay restitution, even though because he wasn't working, he couldn't get employed. All right. You've used your time, but I'm going to give you one minute for rebuttal. Okay. Thank you. Good morning. May it please the Court. I'm Larry Tong, Assistant United States Attorney. If I may turn to the jurisdictional issue first, I would – Are you conceding that the warrants – are you conceding that it's illegal, or what – where are you on that? That's a very awkward question in general. I have a knee-jerk reaction to that as a prosecutor, but the short answer is no, I'm not conceding that the warrant was illegal. As Your Honor has pointed out, there was an oath or affirmation here. The only question, I guess, is its placement within the document. It came right before the judge's signature, which was presented as part of, I believe, a packet to Judge Gilmour for her issuance of the no-bill warrant. But, Your Honor, without even getting to that issue, I would submit that the Court had jurisdiction irrespective of the validity of the arrest warrant. I stand before the Court in light of the recent vacation of Ortuno Higaretta, which I advise the Court of by virtue of a 28-J letter dated Monday. I stand here to basically urge the rather unremarkable proposition that a district court has jurisdiction to conduct revocation hearings during an unexpired term of supervision. If the Court were to find otherwise, it would seem to turn the statute on its head. 3583e3 gives the Court general jurisdiction to modify, to handle any kind of revocation proceedings during the term of supervision. There is nothing in the language of the statute that conditions that jurisdiction upon the issuance of a valid arrest warrant supported by an oath or affirmation. I might point out that even in the absence of Ortuno Higaretta, the Murguia Oliveros case issued by the circuit cites to a different statute, 18 U.S.C. 3606, which authorizes warrantless arrest by a probation officer upon a violation of supervised release. If this Court were to extend Vargas Amaya in the way that my friend asked the Court to do, in essence, it would make 3606 meaningless, because what you would have is a situation where a probation officer could make a warrantless arrest, but then the Court would be powerless to act upon the violation that supported that arrest. I think the statutory scheme contemplates that during a period of supervision, the Court has jurisdiction. Vargas Amaya is an exception to that general rule, because in that unique circumstance, the term of supervised release had expired. And in order to bring the defendant before the Court, the Court relied upon the subsection of 3583 that allowed for jurisdiction in, quote, delayed revocation hearings. That is not our case here. I would submit that we don't need to reach the issue of the oath or affirmation, but that the Court simply has jurisdiction. And I would ask this Court so to find. On the drug issue, the – is – assuming that the review is plain error, although appellant argues that he's entitled to have his past objection move forward, but assuming that it's plain error, we have a guy here that there doesn't appear to be any evidence in the record that he's ever abused drugs. He's not – he – I don't know his exact age, but he has an adult daughter, appears to be probably middle-aged at best, works a lot of different jobs, and he can be tested up to eight times a month. Why wouldn't – you know, how do you justify that? Well, first off, Your Honor, I suggest it is plain error review. I think it's inappropriate to reach back to a sentencing that I think occurred three or four years ago and incorporate the objection. I would suggest that since he was explicitly asked, do you have any objection to the conditions that I am about to impose, and he said no, then obviously we look at plain error. Now, applying that standard, first off, there is a statutory requirement that mandates the imposition of drug testing, and that is, I believe, 3583D. The court is empowered to waive that upon a finding that such a condition is unnecessary. It is not required to waive that condition, and, in fact, in two cases, the Jackson and the Carter case decided by the circuit, this court upheld the imposition of drug testing, even in the absence of evidence of drug usage and in crimes not involving drugs. And I believe Judge Nelson was on the panel of the Carter case. I think the same principle applies equally here. Now, if I can incorporate what happened in the lower court proceedings, as my friend wants to, I would suggest that the court had an elaborate history with this defendant, saw him testify at the original bank fraud trial, saw him at other proceedings, imposed mental health counseling as one of the original conditions of supervision. I believe that was reimposed on the second term of supervised release. If Your Honors look at the record here, even a showing deference to the lower court, it's very clear what's going on here is part of it is a mental situation with the defendant, an attitude towards supervision, an attitude towards paying his financial obligations. I don't think that he he there's no indication he's ever used drugs. So making him go in twice a week when we want him to pay restitution, that could technically be a little disruptive of that. Your Honor, first off, if I can correct one item. It does not require that he go in twice a week. It requires that there be drug testing at the direction, I believe, of the probation officer, in an amount not to exceed eight times a month. That is the standard in our district now in light of, I believe it was a Stevens opinion of this court, that essentially says the- No more than eight. Well, the court can't delegate also. So in essence, that's sort of an overarching outside maximum. There's no evidence in the record he's ever been drug tested. In essence, it's a mandatory condition that the court could have waived. He never objected. It's a plain error review. The eight doesn't mean that there was eight, and probably more fundamentally, assuming this court finds the district court continues to have jurisdiction in the future, he can always seek modification. So your position is his remedy would be if they tested him eight times, no more than eight times a month, and he came back clean a couple of months in a row, he could come in and say, you know, this is interfering with my work, and I know you want me to pay restitution, so, and I've shown for two months in a row at this that I don't have a problem. Yes, Your Honor. That's certainly a remedy, but I have great faith in the system, and I think if that happened, they would stop drug testing him. I don't think it would require a hearing and contested arguments. But my point being, I don't think that is an appropriate issue to be raised in this forum, particularly on a plain error review. Small districts like Hawaii and the one I come from, the judge and the probation officer know each other. Very much so. They don't have any problems. I used to see these boilerplate printed form things about drug testing, and I'd say, well, you're not serious about drug testing for this character, are you? And the probation officer would say, no, forget it. And so we took care of it informally in the district court. But what about this? Now, he's complaining about another thing. He's complaining about having only one bank account, and it seemed to me like that might be a pretty reasonable thing if you want to monitor his, since he seems to have a problem about other people's money, that it would be a reasonable and efficacious way to monitor him, to get it all into one bank account where you could keep an eye on it. But I just wondered. I would agree entirely with Your Honor. Given his history of dealing with other people's money in the underlying bank fraud case and his problem in accounting for his payments and making restitution, I think it's reasonably related to the purpose of not only collecting restitution but also his rehabilitation in dealing with money, which will project obviously past the five-year term of supervision. So I think that complaint that he is alleging is definitely unfounded. And, again, that was not objected to at the time of the imposition of the condition. I would suggest that all of the financial conditions, in fact, are reasonably related to the need for deterrence. For example, the tax conditions, given this defendant's history of dealing with other people's money. A little diversion. The electronic miracle age. I apologize. I have lost my train of thought. I believe I was just arguing that the financial conditions, given his history, are reasonably related. The probation officer suggested, and the court found, that he was overwithholding to the point where no taxes were being withheld. He was already behind in restitution. It was likely that he would be in arrears on tax purposes and fall into further trouble. I see that my time is up. I don't want to go into an overtime penalty, so I thank the court for its attention. Thank you for your argument. May it please the court, just three things. First of all, with respect to the Mejia case, that was clearly limited to its facts. The defendant in that particular case had already been arrested at the border, and so the sole issue was whether or not his absconding from his supervised release told the time of his supervision. It's clearly not the same issue as in this particular case. With respect to the drug issue, if the condition is not helpful and, in fact, is from left field, which it appears to be, then why have it? Because basically what it does is, again, sets up the defendant for failure. Eight drug tests, if it were imposed, would not only prevent the defendant from paying restitution, it would probably impose a great financial burden if the probation officer wanted him to pay for those drug tests. But the response was it's a max, it's part of the boilerplate, and that it's probably unlikely that eight tests would take place and that they did interfere with his job. He could simply complain first to the probation officer and then to the court if necessary. Why isn't that sufficient? Well, Your Honor, I think you have to start from the beginning. If the condition is unjust in the first place, why authorize the court to do it or why sanction? Well, in my experience, that's the first thing that defense attorneys jump on is when you want to drug test people. And courts, you know, district courts, trial courts, spend a lot of time dealing with that issue because people don't want to be. And, you know, I think your client wasn't that concerned about it because he doesn't use drugs and no one's testing him, and, you know, that's... Well, that's true, Your Honor. And I guess my point would simply be why have it if it's not necessary and just cloud up the record. But, again, if the probation officer wanted to really set the defendant up for failure, it would be very easy to do that by simply start having him make drug tests. And as indicated in the record in this particular case... If that happened, he could call the court's attention to it. That's true. That's true. And that would put the court in a difficult position of, as Your Honor was saying, most courts have a pretty close relationship with the probation office and they like to keep comedy in that type of thing. Seems like they're in the outer office all the time. Right. That's right, Your Honor. Well, thank you both for your argument. Thank you, Your Honor. And this matter will stand submitted. And thank you for coming from Hawaii to San Francisco.
judges: Goodwin, D.W. Nelson, Callahan